## Charleston Road.

2g　　467
f37SC ³ 58
37SC ² 59

1. Where road-viewers make an incomplete or informal report, it is discretionary with the court to refer it back to the same, or different viewers.

2. Where viewers fail to agree in a report, or made a report void for uncertainty, the Quarter Sessions may make a further order in the case without a new petition, and the appointment in open court is all the notice required.

3. In all cases the width of the road must be fixed at the term of the court, when the report of the viewers is approved; and in no case should the proceedings be recorded until the term thereafter.

*Certiorari* to the Court of Quarter Sessions of *Chester county.*

*Smith*, for plaintiff in error.

*Hickman, contra.*

The opinion of the court was delivered by

KNOX, J.—We will consider the exceptions to this proceeding in the order in which they stand.

1. "The court erred in appointing the fourth jury, after two juries had reported against the road."

This is not true in point of fact. The first view reported in favor of the road. The review against it, the re-review reported that a road was necessary, but not on the ground in which the original view had located it, but failed to designate the location approved of by them. The fourth, or re-re-review, was a mere continuation of the third view, which had in effect accomplished nothing. Whether the report should have been referred back to the third view to complete, or to different viewers, was matter of discretion in the Quarter Sessions.

2. "The court erred in appointing the fourth jury without a petition or notice to the opposite party, and without taking any action on the report of the jury of re-review."

This exception is substantially disposed of in our answer to the first. Whenever viewers fail to agree in a report, or make

[Charleston Road.]

a report which is void for uncertainty, it is the undoubted right of the Quarter Sessions to make a further order in the case, without a new petition, and the appointment of different viewers is clearly regular. The third viewers had really made no report, and there was nothing to confirm or set aside. We presume the appointment was in open court, and this is all the notice that the law requires.

3. "The court erred in permitting the record to be altered, the names of the fourth jury to be erased from it, and other names substituted, without petition or notice to the opposite party, and without report having been made by the said fourth jury, or the order to them vacated or annulled."

The appointment of viewers before the order has actually issued, is subject to the revision of the court. Here one set of viewers had been named, and their names inserted in the order, but upon a change being made in the viewers, the first names were erased, and those substituted entered in the order. It would have been better to have made an entire new order, as interlineations and erasures ought to be avoided in public records, but this is more matter of taste than of legal authority. We presume that the court below had good and sufficient reasons for the change; at all events we cannot review them, good or bad.

4. "The court erred in receiving and confirming the report of the six persons substituted for the fourth jury."

There is nothing in this but what has already been considered.

5. "The court erred in not directing of what breadth the road laid out should be opened."

This assignment of error was made upon a misconception of the state of the record. By a supplementary record, filed by the defendants in error, it appears that the breadth of the road was fixed before the *certiorari* was taken; and although no date is given to the order fixing its width, it appears to have been done upon the final confirmation of the road. The only entry we have of the final confirmation, is in immediate connection with the order fixing its width; and in the absence of anything disposing of it, we will presume that both orders were made at the same time. The state of the record is as follows: On the 24th of April, 1854, the report was read and confirmed *nisi*. On the next day exceptions were filed, and a rule granted to show cause why the report should not be set aside, "returnable second Monday of June next." The next entry is August 9th. Rule discharged and application rejected. And then follows the record, reciting that "the viewers made report in writing to last court," which was read and confirmed, and the "same is by this court ordered to be recorded, and opened thirty-three feet wide." There is no date to this order, but it is clear that

[Charleston Road.]

it was after the exceptions had been disposed of, and at the time when the report was ordered to be entered of record. Now the Act of Assembly says, " If the court shall approve of the report of viewers allowing a road, they shall direct of what breadth the road so approved shall be opened, and at the next court thereafter, the whole proceedings shall be entered of record, and thenceforth such road shall be taken, declared, and allowed to be a lawful public road or highway, or private road, as the case may be." There is nothing left here for construction, for in language too plain to be mistaken, it requires that the width of the road should be fixed by the court at the same term in which the report is approved, and that a term should "intervene before the proceedings should be entered of record, and the road ordered to be opened." This question has been repeatedly before this court, and has been uniformly decided as above stated. See 3 W. & S. 539; 4 Id. 39; 1 Barr, 356; 4 Id. 337. It is to be regretted that these adjudications, following as they do the very words of the Act of Assembly, have not produced greater uniformity in the practice of the different districts of the State. Upon presentation of a report of viewers, laying out a road, to the court, if regular upon its face, it should be endorsed, approved *nisi*, and its width fixed. If no exceptions are filed, and no reviewers asked for at the term upon which it is presented, or at the next succeeding term, the proceedings should be entered of record, and thenceforth, in the language of the Act of Assembly, " such road shall be taken, deemed, and allowed to be a lawful public road or highway, or private road, as the case may be." If exceptions are filed, or review prayed for, the proceedings should not be entered of record until they are finally disposed of. In all cases the width must be fixed at the term when the report is approved, and in no case should the proceedings be recorded until a term thereafter. As the breadth of the road in the case before us was not fixed until the exceptions were disposed of, and until the record was made of the proceedings, the road is not a lawful one; and we must set aside anything that has been done subsequent to the time when the width should have been fixed. At the last term of this court, held at Pittsburgh, in two unreported cases, where the objection was that the court had not fixed the width, we set aside the final order of confirmation, and remanded the record to the Quarter Sessions for further proceedings, according to law. We are disposed to adhere to this practice, believing it to be more just than to require the whole matter to be proceeded with *de novo*.

And now, May 16th, A. D. 1855, it is ordered that all proceeding in this case, subsequent to the entry of the 24th April, A. D. 1854, viz., "read and confirmed *nisi*," be and are hereby

reversed and set aside; and it is further ordered that the record be remitted to the Court of Quarter Sessions for Chester county, with directions to said court to fix the breadth of said road, and thereafter to receive exceptions, and dispose of the same according to law, if any are filed on or before the expiration of the term next succeeding that to which the width of the road is fixed.