# Franconia Township Road.

1. A rule of court was, that when a procedure for a road had finally failed, another application for such road should not be acted on for one year. A road had been reported and on technical grounds set aside.  *Held*, that the view had not " finally failed," and the case was not within the rule.
2. For the purpose of curing technical defects new viewers may be appointed on the old petition.
3. Exceptions to a road were filed August 19th 1872, the hearings on the exceptions were continued from time to time without decision until May 2d 1874, when the road was confirmed. ' *Held*, that an application for a review was then too late.

January 21st 1875.   Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Certiorari to the Court of Quarter Sessions of *Montgomery county* :  Of July Term 1874, No. 93.

On the 15th of May 1871, a number of inhabitants of Franconia township petitioned the Court of Quarter Sessions for viewers for a public road from the county line road between Montgomery and Bucks counties, on land of Henry H. Roth, to the Harleysville and Souders turnpike road, on lands of M. S. Henzey and Jonas Mayer.   Viewers were accordingly appointed.

They reported that they had viewed and laid out a road, beginning at a point in the county line road, on land of Henry H. Roth, and by various courses and distances crossing the North Pennsylvania railroad to the Harleysville and Souders turnpike, on lands of Michael Henzey, &c.   The report was filed August 24th 1871 and confirmed Nisi.

On the 25th of November, the North Pennsylvania Railroad Company filed exceptions to the report of the viewers, viz :—

1.  That no notice had been given to that company of the time

[Franconia Township Road.]

and place of the meeting of viewers, nor had the company any knowledge thereof, and they were not represented at the view.

2. The petition set out no definite point for the beginning or ending of the road and was so uncertain that viewers could not be appointed upon the petition.

3. The points of beginning and ending were indefinite and uncertain.

The report was set aside January 8th 1872.

On the 6th of March 1872 another petition of inhabitants of Franconia township for the same road was filed, and viewers were appointed. The viewers reported a road, beginning at Souders' station and Harleysville turnpike, on land of Michael Henzey, &c., and crossing the North Pennsylvania Railroad, thence by various courses and distances to the county line road, on land of Henry H. Rhoads, being the same road laid out by the former jury.

This report was filed May 22d 1872, and on August 19th exceptions were filed, viz. :—

1. That the proceedings were in contravention of a rule of the Court of Quarter Sessions, that "when a procedure for a road or bridge has finally failed, another application for such contemplated road or bridge shall not be acted on for one year from the session at which such road or bridge was finally rejected."

2. The road will cross the North Pennsylvania Railroad at grade and be extremely dangerous, and impose an undue burden on the railroad company to prevent accidents.

3. The road is unnecessary, there being four other roads running parallel with it within a mile and a half.

Testimony was heard upon the exceptions. There were a number of continuances of the case until April 8th 1874, when the exceptions were dismissed and the report confirmed: and "petition to be filed as of to-day, on or before May 2d 1874, for a review, and rule granted to show cause why jurors should not be appointed. Returnable 3d Monday of May 1874."

On the 2d of May 1874, a petition for a review was filed; after setting out the report, &c., laying out the road, &c., it continued :—

"Your petitioners further represent that the said report has been pending upon exceptions filed thereto until the 8th of April A. D. 1874," and prayed for the appointment of reviewers.

On the 16th of June 1874, the petition for review was dismissed, Ross, P. J., delivering the following opinion :—

"This application for a review has some meritorious considerations to support it.

"Before the original petition was filed, I, as an individual member of the court, had announced my intention to disapprove and refuse to lay out any public road crossing a railroad at grade,

[Franconia Township Road.]

unless it appeared that a controlling and imperative necessity required such road for the accommodation of the public.

" After this petition was filed, and report made upon it, Mr. Fox, the counsel for the exceptants, came into court and inquired whether the court had made such a rule. He was informed by the court what had been said by the presiding judge, and was also told that when a full bench was present a consultation would be had, and if the associates agreed with the presiding judge, such would be the policy of the court in laying out public roads. A conference was had, and the court determined to lay out no public road which crossed a railroad at grade, unless a controlling and imperative public necessity required such road. The counsel for the exceptants then filed exceptions to the report, relying on the fact that this road crossed the track of the North Pennsylvania Railroad at a grade, and did not file a petition for a review.

" On the final hearing of the exceptions, the associate judges came to the conclusion that the facts in the case did present the road as one demanded by a controlling and imperative public necessity, and dismissed the exceptions. In this conclusion I did not, and do not concur, and should have sustained the exceptions.

" My colleagues desire me to say that they adhere to the rule, where the public safety justifies it, and will enforce it in all proper cases, but that in this instance they are satisfied that public safety and convenience require a road at this point.

" The exceptants alleging that they were misled by the announcement of the court, ask that they be permitted to file this petition for a review.

" If we could entertain it under the law and the rules of court, we would do so, but the hastiest examination shows that we cannot. The rule with its exception was announced, and the court have decided that this road was within the exception. If the exceptants thought it was not, they took the risk of their own judgment and must abide the result."

The exceptants removed the record to the Supreme Court by certiorari, and assigned for error :—

1. Not setting aside the report of the viewers under the rule of court.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*

3. Dismissing the petition for review.

*G. R. Fox*, for certiorari.

*B. M. Boyer*, contrâ.

Mr. Justice GORDON delivered the opinion of the court, February 1st 1875.

Two exceptions are taken to the action of the court in this case. The first is, that they violated one of their own rules in appoint-

[Franconia Township Road.]

ing viewers on the petition, upon which these proceedings are founded. That rule reads as follows, to wit: " When a procedure for a road or bridge has finally failed, another application for such contemplated road or bridge shall not be acted upon for one year from the session at which such road or bridge was finally rejected."

The record shows that there had been a previous petition for a road between the same points as those indicated in the second one, May 15th 1871, and a report of viewers thereon, which was set aside January 8th 1872. This statement, on first blush, would seem to indicate an infraction of the rule above set forth. But upon further examination it appears that the former view was set aside on purely technical grounds, and not upon a judgment on the merits of the proposed road. The Court of Quarter Sessions thought the case did not come within the spirit of the rule, or in other words, that the view had not " finally failed." In this we think they were right. That there should be some reasonable restriction upon re-applications for views, after the judgment of the court has passed, upon full hearing, on the necessity of the road asked for, no one can well doubt.

On the other hand there is no reason for such restriction where the view has been set aside for informality, for, in such case, the merits of the application are not reached. For the purpose of curing such technical defects, new viewers may be appointed upon the old petition : Charleston Road, 2 Grant 467. And we cannot see why the same end may not be reached as well upon a new petition.

The second exception is to the action of the court in refusing the appellant a review. In this, also, we think they were right. The Act of Assembly requires the application for this purpose, to be made at or before the next term of the court after the report on the first view. But as the appellants' application was not made until nearly two years after the report was filed, it was clearly too late. The design of the act in providing for these reviews, is that the court may be fully informed as to the necessity of the road before their final action upon the report, and hence it is that applications therefor are required to be made promptly.

The complaint made that the judges violated a rule adopted for their own government, to wit: " that no road crossing a railroad at grade should be confirmed unless a controlling necessity existed," is something that we can take no cognisance of. It is indeed an excellent rule if properly administered, but as it rests wholly in the discretion of the court we can have nothing to do with it.

The proceedings of the Quarter Sessions are affirmed.